IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DESHAWN JOHNSON,

    **Petitioner,**

v.

    **CASE NO. 2:07-CV-490**
    **JUDGE FROST**
    **MAGISTRATE JUDGE KING**

MICHAEL SHEETS, Warden,

    **Respondent.**

## ORDER

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Doc. No. 4. This matter is before the Court on petitioner's motion to amend the petition with new claims, Doc. No. 21, respondent's memorandum in opposition, Doc. No. 29, petitioner's reply, Doc. No. 31, and the relevant exhibits of the parties.

For the reasons that follow, petitioner's motion to amend the petition, Doc. No. 21, is **GRANTED** in part and **DENIED** in part. Respondent is **DIRECTED** to file a supplemental response to the amended petition within twenty (20) days. Petitioner may file a reply within twenty (20) days thereafter.

## PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On May 21, 2003, appellant, Ronald Smith and Tishawanda Tanner were in a car driving around Columbus and smoking marijuana. Tanner was appellant's girlfriend. Between 1 p.m. and 1:30 p.m., they stopped at Demetrius Tatum's house

located at 1109 Hildreth Avenue in Columbus, Ohio, to buy marijuana. Appellant got out of the car and went into Tatum's house just as Elizabeth Grimes was leaving. Tatum and Grimes had been talking and watching television in Tatum's house. Grimes walked past appellant when she noticed Tanner sitting in a car parked on the street. Grimes and Tanner were friends. Grimes also saw a man (Smith) in the backseat of the parked car. As Grimes spoke with Tanner, appellant went into Tatum's house. Grimes finished her conversation with Tanner, got into her car and drove away.

According to Smith, while he and Tanner were waiting in the car for appellant, he heard four or five gunshots. Appellant then came out of Tatum's house and got into the car. Appellant told Smith that appellant "had to whack a dude" because "the dude was running and he had to bust him up." Smith also saw a chain and watch fall out of appellant's coat pocket. When Smith was dropped off, he asked appellant what had happened. Appellant told him to just watch the news.

Shortly after 2 p.m. that same day, Officer Jackson Rennie of the Columbus Police Department was dispatched to 1109 Hildreth Avenue on a call of shots fired inside the residence. Officer Rennie and his partner arrived at the address and found Tatum lying on the floor. He was wearing only boxer shorts and had an apparent gunshot wound in his chest. Tatum was pronounced dead at the scene. Police discovered three spent casings inside Tatum's house.

Upon returning to the house after the murder, Damien Sheppard, Tatum's roommate and cousin, noticed that the house was "kind of trashed." He also noticed that a chain and a watch Tatum normally wore were missing.

A few days after the shooting, Smith became concerned that he would be implicated in Tatum's murder. Therefore, he contacted Columbus police detectives. Smith told the police about what he had witnessed on the afternoon of May 21, 2003.

As a result, appellant was arrested and charged with one count of aggravated murder in violation of R.C. 2903.01 with a death

2

penalty specification pursuant to R.C. 2929.04 and a firearm specification pursuant to R.C. 2941.145. He was also charged with one count of aggravated robbery in violation of R.C. 2911.01 with a firearm specification pursuant to R.C. 2941.145, and one count of having a weapon while under disability in violation of R.C. 2923.13. Appellant entered a not guilty plea to the charges and proceeded to a jury trial. The trial court dismissed the weapon under disability count before trial.

During the voir dire, the State disclosed for the first time to appellant's counsel the results of ballistics tests conducted by Mark Hardy, the State's ballistics expert. The tests compared markings on the spent casings recovered in the victim's house to markings on a live round the police later found in the vehicle in which appellant was a passenger on the day of Tatum's death. Hardy concluded that at one time the ammunition had been chambered in the same weapon. Appellant's counsel objected to the State's use of these test results, arguing that the State failed to timely produce them. The trial court initially excluded the evidence, concerned that the case had been pending for almost a year and a half and that the trial had already begun. The State asked the trial court to reconsider its decision, advising the trial court that it would dismiss the death penalty specification if the trial court granted a continuance instead of excluding the test results, thereby allowing appellant's counsel additional time to review the test results. Appellant's counsel objected to a continuance and renewed its argument to exclude the test results. The trial court reconsidered and determined that exclusion of the evidence was too severe of a penalty. With that ruling in mind, the parties and the trial court agreed that the State would dismiss the death penalty specification, and that the trial court would continue the case to allow appellant's counsel additional time to assess the test results and to prepare for Hardy's testimony.

Ultimately, the trial resumed and at its conclusion the jury found appellant guilty of aggravated murder and aggravated robbery as well as the attendant firearm specifications.

*State v. Johnson*, 2006 WL 158628 (Ohio App. 10 Dist. January 18, 2006). Petitioner did not

file a timely appeal; however, on January 5, 2005, represented by new counsel, he filed a motion for delayed appeal, which motion was granted. *Exhibits 7 and 8 to Return of Writ*. Petitioner asserted the following assignments of error:

> [1.] Appellant's conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.
>
> [2.] Appellant's due process rights under the state and federal constitutions were violated when inadmissible ballistics testimony was presented for the state.
>
> [3.] Appellant's due process rights under the state and federal constitutions were violated when a state's witness was permitted to testify about alleged statements of Appellant where the prejudicial impact of the statement outweighed its probative value.

*See id.; Exhibit 9 to Return of Writ*. On January 19, 2006, the appellate court affirmed the trial court's judgment. *Id.; Exhibit 11 to Return of Writ*. Petitioner filed a timely appeal in which he raised the same claims. *Exhibit 12 to Return of Writ*. On May 24, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *Exhibit 14 to Return of Writ*.

On June 28, 2007, acting through counsel, petitioner filed a delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). *Exhibit 15 to Opposition to Motion to Amend*. Petitioner asserted the ineffective assistance of appellate counsel due to that counsel's failure to raise the following issues on direct appeal:

> 1. The trial court erred when it refused to impanel a new jury after dismissing the death penalty specification, depriving Mr. Johnson of his Sixth Amendment right to a fair and impartial jury.

4

> 2. The trial court erred when it failed to grant a mistrial based on the prosecutor's misconduct depriving Mr. Johnson of his due process rights.
>
> 3. The trial court erred when it refused to exclude late evidence in violation of Crim. R. 16.

*Id.* On August 28, 2007, the appellate court denied petitioner's delayed application for failure to establish good cause for his untimely filing. *Exhibit 16 to Opposition to Motion to Amend.* Petitioner filed a timely appeal to the Ohio Supreme Court. He raised the following propositions of law:

> 1. A defendant is deprived of the right to a fair and impartial jury when a trial court refuses to impanel a new jury after it selected a death penalty qualified jury, and the State dismisses the death penalty specification....
>
> 2. A defendant's due process rights are violated when a trial court fails to grant a mistrial based on the prosecutor's misconduct....
>
> 3. A defendant is deprived of due process and a fair trial when the trial court refuses to exclude evidence which the State attempts to introduce for the first time after the trial begins....
>
> 4. When an appellate attorney fails to raise meritorious issues in a criminal defendant's direct appeal of a conviction, the attorney renders constitutionally ineffective assistance....
>
> 5. A court of appeals denies a criminal defendant due process of law when it denies a delayed application for reopening under App.R. 26(B), when the appellant has demonstrated that good cause for delay exists....

*Exhibit 17 to Opposition to Motion to Amend.* On December 12, 2007, the Ohio Supreme Court dismissed the appeal. *Exhibit 19 to Opposition to Motion to Amend.*

5

Represented by the Ohio Public Defender, petitioner filed the original petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 on May 30, 2007. He initially alleged only the following claim for relief:

> Due Process bars the admission of improper ballistics testimony, and its erroneous admission warrants a new trial.

*Petition.* On December 18, 2007, and after completing state court proceedings on his delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B), petitioner filed a motion to amend the petition to include the following additional claims:

> 2. A defendant is deprived of the right to a fair and impartial jury when a trial court refuses to impanel a new jury after it dismisses the death penalty specification....
>
> 3. A defendant's due process rights are violated when a trial court fails to grant a mistrial based on the prosecutor's misconduct....
>
> 4. A defendant is deprived of due process and a fair trial when the trial court refuses to exclude evidence which the state attempts to introduce for the first time after the trial begins....
>
> 5. When an appellate attorney fails to raise meritorious issues in a criminal defendant's direct appeal of a conviction, the attorney renders constitutionally ineffective assistance....

*Motion to Amend Petition,* Doc. No. 21. Respondent opposes amendment of the petition to include claims two, three, and most of claim five as time-barred under 28 U.S.C. §2244(d).[1]

*Opposition to Motion to Amend,* Doc. No. 29.

### REQUEST TO AMEND THE PETITION WITH NEW CLAIMS

---

[1] Petitioner has withdrawn his request to amend the petition to assert yet an additional claim. *Reply to Opposition to Amend the Petition*, Doc. No. 31, at 4.

6

Under the Antiterrorism and Effective Death Penalty Act of 1996, a one-year statute of limitations is imposed on the filing of habeas corpus petitions. 28 U.S.C. § 2244(d) provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Respondent opposes petitioner's request to amend the petition by asserting claims two, three and all of claim five, with the exception of petitioner's allegation in claim five of ineffective assistance of counsel due to his attorneys' failure to challenge ballistics evidence. Respondent contends that all those foregoing claims are time-barred and should not be

considered by this Court.[2]

Petitioner's conviction became final on August 22, 2006, *i.e.*, ninety days after the Ohio Supreme Court's May 24, 2006, dismissal of his appeal, when the time period expired to file a petition for a writ of *certiorari* to the United States Supreme Court. *See Clay v. United States*, 537 U.S. 522, 527 (2003); *Bronaugh v. Ohio*, 235 F.3d 280, 283 n. 3 (6th Cir. 2001). The statute of limitations expired one year later, on August 22, 2007.  Therefore, while petitioner's habeas corpus petition, filed on May 30, 2007, is timely, any new claims presented in his December 18, 2007, motion to amend may be time-barred unless such claims "relate back" to the date the initial petition was filed within the meaning of Rule 15 of the Federal Rules of Civil Procedure.  *See Mayle v. Felix*, 545 U.S. 644 (2005).

Rule 15 governs amendments to federal habeas corpus actions. *See* 28 U.S.C. § 2242 ¶ 3 (habeas corpus actions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); *Hodges v. Rose*, 570 F.2d 643, 649 (6th Cir. 1978). The rule provides in relevant part as follows:

(a) Amendments Before Trial.

   (1) *Amending as a Matter of Course.*  A party may amend its pleading once as a matter of course:

      (A) before being served with a responsive pleading; or,

      (B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial

---

[2] Respondent does not object to petitioner's request to amend the petition to include claim four, in which petitioner asserts that he was denied a fair trial when the trial court refused to exclude ballistics evidence.

8

   calendar.

       *    *    *

 (c) Relation Back of Amendments.

  (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

   (A) the law that provides the applicable statute of limitations allows relation back;

   (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading;

F.R. Civ. P. 15 (2007). This rule is intended to promote a "liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)).

In *Mayle v. Felix, supra*, 545 U.S. at 644, the United States Supreme Court clarified the circumstances under which a habeas corpus petitioner may amend his petition with new and otherwise untimely claims. In that case, the petitioner had initially asserted the denial of his right to confront witnesses by admission at trial of tape recorded statements of a prosecution witness. The petitioner later attempted to amend his petition to include a claim that he had also been denied a fair trial by the admission of pre-trial statements to police which, he alleged, had been coerced. *See id.* The Supreme Court reversed the Court of Appeals' decision permitting the amendment to the petition, reasoning:

> An amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both

9

time and type from those the original pleading set forth.

          \*          \*          \*

The "original pleading" to which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas proceeding. Under Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Habeas Corpus Rule 2(c) is more demanding. It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *See also* Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important...."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 (" '[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)). Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:

**"CAUTION: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date." Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App.** (emphasis in original).

A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted." § 2243. Under Habeas Corpus Rule 4, if "it plainly appears from the petition ... that the petitioner is not entitled to relief in the district court," the court must summarily dismiss the petition without ordering a responsive pleading. If the court orders the State to

10

file an answer, that pleading must "address the allegations in the petition." Rule 5.

* * *

Congress enacted AEDPA to advance the finality of criminal convictions. *See Rhines v. Weber*, 544 U.S. 269, ----, 125 S.Ct. 1528, 1534, 161 L.Ed.2d 440 (2005). To that end, it adopted a tight time line, a one-year limitation period ordinarily running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance.... The very purpose of Rule 15(c)[1][B], as the dissent notes, is to "qualify a statute of limitations." *Post*, at ---- 2. But "qualify" does not mean repeal. *See Fuller v. Marx*, 724 F.2d 717, 720 (C.A.8 1984). Given AEDPA's "finality" and "federalism" concerns, *see Williams v. Taylor*, 529 U.S. 420, 436, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); *Hicks*, 283 F.3d, at 389, it would be anomalous to allow relation back under Rule 15(c)[1][B] based on a broader reading of the words "conduct, transaction, or occurrence" in federal habeas proceedings than in ordinary civil litigation, *see supra*, at ---- ---- 10-12.

* * *

... So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.... Our reading is consistent with the general application of Rule 15(c)[1][B] in civil cases ... with Habeas Corpus Rule 2(c) ... and with AEDPA's installation of a tight time line for § 2254 petitions....

*Id*. (Citations and footnotes omitted.) In a footnote, the Supreme Court gave examples of

claims "tied to a common core of operative facts" that related back to the original petition:

> For example, in *Mandacina v. United States*, 328 F.3d 995, 1000-1001 (C.A.8 2003), the original petition alleged violations

11

> of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), while the amended petition alleged the Government's failure to disclose a particular report. Both pleadings related to evidence obtained at the same time by the same police department. The Court of Appeals approved relation back. And in *Woodward v. Williams*, 263 F.3d 1135, 1142 (C.A.10 2001), the appeals court upheld relation back where the original petition challenged the trial court's admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted. *See also* 3 J. Moore, et al., Moore's Federal Practice § 15.19[2], p. 15-82 (3d ed.2004) (relation back ordinarily allowed "when the new claim is based on the same facts as the original pleading and only changes the legal theory").

*Mayle v. Felix, supra,* 545 U.S. at 664 n. 7.

The United States District Court for the District of Arizona has summarized the Supreme Court's holding in *Mayle*:

> In adopting a "time and type" analysis for relation back, the Court followed the majority of circuit courts that had resolved that new claims differing in both time and type do not relate back to a timely-filed petition. *See Davenport v. United States*, 217 F.3d at 1341, 1346 (11th Cir. 2000) (stating that newly-offered claims of IAC do not relate back to timely-filed claims of IAC because they were based on different sets of facts); *United States v. Pittman*, 209 F.3d 314, 317-18 (4th Cir. 2000) (stating that claims regarding obstruction of justice enhancement and failure of counsel to file an appeal do not relate back to claims that the district court lacked jurisdiction to impose an enhanced sentence and the government failed to establish by a preponderance of the evidence that the drugs at issue were crack cocaine); *United States v. Duffus*, 174 F.3d 333, 337-38 (3rd Cir. 1999) (stating that a claim of IAC for failing to move to suppress evidence did not relate back to a claim of IAC for failing to contend on appeal that evidence was insufficient to support conviction); *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999) (stating that IAC claims

> alleged in a timely-filed petition were separate from other IAC claims because "[f]ailing to file an appeal is a separate occurrence in both time and type from a failure to pursue a downward departure or failure to object to the type of drugs at issue"). However, in contrast, if the new claim merely clarifies or amplifies a claim or theory already in the original petition, the new claim may relate back to the date of the original petition and avoid a time bar. *See Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001).

*Schurz v. Schriro*, 2006 WL 89933 (D.Arizona, January 11, 2006).

In the only claim asserted in his original petition, petitioner claimed only that he had been denied a fair trial by the allegedly improper admission of ballistics evidence. *Petition*. In his motion to amend the petition, Doc. No. 21, petitioner now seeks to amend the petition to include additional claims that he had been denied a fair and impartial jury because the trial court refused to impanel a new jury after it dismissed the death penalty specification; that he had been denied a fair trial due to prosecutorial misconduct and the allegedly improper exclusion of evidence; and that he had been denied the effective assistance of appellate counsel due to his attorney's failure to raise the foregoing issues on appeal. *See Motion to Amend*. These claims raise new issues based on facts differing in time and type from petitioner's initial claim of denial of fair trial due to admission of ballistics evidence. *See Mayle v. Felix, supra*, 545 U.S. at 648.

Petitioner, however, contends that claim two, in which he alleges that he had been denied a fair and impartial jury because the trial court refused to impanel a new jury, is timely because it relates to his initial claim of improper admission of ballistics evidence; it was this admission of ballistics evidence that resulted in the dismissal of the death penalty

13

specification against petitioner.³ Petitioner contends that claim three, which alleges that the prosecutor made improper statements during closing argument, *see Exhibit 17 to Return of Writ*, is timely because the prosecutor's misconduct "first arose at the beginning of trial" with the failure to timely produce ballistics evidence "and continued up and through and during closing arguments." *Motion to Amend*, at 4-5. In order to determine whether improper remarks made during closing arguments denied petitioner a fair trial, petitioner argues that the prosecutor's comments must be viewed in light of the earlier failure to timely produce ballistics evidence. *See id.* Finally, petitioner contends that claim five, in which he asserts the ineffective assistance of counsel, is timely because such claim "arose while exhausting... claims associated with the ballistics testimony and State's misconduct and therefore arose out of the same transaction." *See id.*, at 5.

This Court is not persuaded by petitioner's arguments. Petitioner argued in his delayed Rule 26(B) application that, after *voir dire* but before the start of the presentation of evidence, the trial court dismissed the death penalty specification and that a new jury should have been empaneled because otherwise qualified jurors had been dismissed because of their opposition to the death penalty – an issue that was no longer relevant to his case. He further argued in support of this claim that the only jurors remaining after *voir dire* were those without opposition to the death penalty. *See Exhibit 15 to Opposition to*

---

³ During *voir dire*, the prosecution revealed its intent to introduce scientific ballistics evidence against petitioner that had not been earlier disclosed in discovery. *See Transcripts, Exhibits to Opposition to Motion to Amend*. The trial court initially ruled that such evidence would be excluded, but later withdrew that ruling and, by agreement of the parties, the death penalty specification was dismissed. *See id.*

14

*Motion to Amend.* Neither this claim, nor the other claims that petitioner seeks to now include in these habeas corpus proceedings could have reasonably been anticipated from petitioner's initial, timely filed, claim. Further, and contrary to petitioner's argument here, the facts supporting claims two, three, and most of claim five necessarily involve facts that differ in time and type from his timely filed claim of improper admission of ballistics evidence. This Court therefore concludes that these claims are time-barred. To permit amendment of the petition to assert claims so tenuously related to petitioner's initial, timely filed, claim would be to allow "a miscellany of claims" to be raised at any time, an approach against which the Supreme Court cautioned in *Mayle v. Felix, supra*, 545 U.S. at 661. *See also McClean v. United States,* unpublished, 2005 WL 2172198 (11th Cir. September 8, 2005)(untimely claims of ineffective assistance of counsel due to attorney's failure to show defendant a videotape of the drug transaction and its effect on plea negotiations do not relate back to ineffective assistance of counsel for failing to prepare adequately for trial); *see also United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005)(differing claims of ineffective assistance of counsel do not relate back to each other), citing *Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000).

    **WHEREUPON,** petitioner's unopposed February 6, 2008, motion for leave to supplement the record with a copy of the transcripts of *voir dire*, Doc. No. 28, is **GRANTED**. Petitioner's motion to amend the petition to assert claims two, three, and claim five, with the exception of petitioner's allegation in claim five of ineffective assistance of counsel due to his attorneys' failure to challenge the admission of ballistics evidence,

15

Doc. No. 21, is **DENIED**; petitioner's motion to amend the petition to assert claims four and a claim of ineffective assistance of counsel due to his attorneys' failure to challenge ballistics evidence is **GRANTED.**  Respondent is **DIRECTED** to respond to petitioner's amended claims within twenty (20) days; petitioner may file a reply within twenty (20) days thereafter.


April 3, 2008                                                                                  <u>  s/Norah McCann King         </u>
                                                                                                                  Norah McCann King
                                                                                                                  United States Magistrate Judge