IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DESHAWN JOHNSON,**

    **Petitioner,**

v.

**MICHAEL SHEETS, Warden,**

    **Respondent.**

**CASE NO. 2:07-CV-490
JUDGE FROST
MAGISTRATE JUDGE KING**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, as amended, respondent's return of writ and supplemental return of writ, petitioner's traverse, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The facts and procedural history of this case are detailed in this Court's *Order,* April 3, 2008, Doc. No. 33, but are repeated here.  The Ohio Tenth District Court of Appeals summarized the facts and procedural history as follows:

> On May 21, 2003, appellant, Ronald Smith and Tishawanda Tanner were in a car driving around Columbus and smoking marijuana. Tanner was appellant's girlfriend. Between 1 p.m. and 1:30 p.m., they stopped at Demetrius Tatum's house located at 1109 Hildreth Avenue in Columbus, Ohio, to buy marijuana. Appellant got out of the car and went into Tatum's house just as Elizabeth Grimes was leaving. Tatum and Grimes had been talking and watching television in Tatum's house. Grimes walked past appellant when she noticed Tanner sitting in a car parked on the street. Grimes and Tanner were friends.

Grimes also saw a man (Smith) in the backseat of the parked car. As Grimes spoke with Tanner, appellant went into Tatum's house. Grimes finished her conversation with Tanner, got into her car and drove away.

According to Smith, while he and Tanner were waiting in the car for appellant, he heard four or five gunshots. Appellant then came out of Tatum's house and got into the car. Appellant told Smith that appellant "had to whack a dude" because "the dude was running and he had to bust him up." Smith also saw a chain and watch fall out of appellant's coat pocket. When Smith was dropped off, he asked appellant what had happened. Appellant told him to just watch the news.

Shortly after 2 p.m. that same day, Officer Jackson Rennie of the Columbus Police Department was dispatched to 1109 Hildreth Avenue on a call of shots fired inside the residence. Officer Rennie and his partner arrived at the address and found Tatum lying on the floor. He was wearing only boxer shorts and had an apparent gunshot wound in his chest. Tatum was pronounced dead at the scene. Police discovered three spent casings inside Tatum's house.

Upon returning to the house after the murder, Damien Sheppard, Tatum's roommate and cousin, noticed that the house was "kind of trashed." He also noticed that a chain and a watch Tatum normally wore were missing.

A few days after the shooting, Smith became concerned that he would be implicated in Tatum's murder. Therefore, he contacted Columbus police detectives. Smith told the police about what he had witnessed on the afternoon of May 21, 2003.

As a result, appellant was arrested and charged with one count of aggravated murder in violation of R.C. 2903.01 with a death penalty specification pursuant to R.C. 2929.04 and a firearm specification pursuant to R.C. 2941.145. He was also charged with one count of aggravated robbery in violation of R.C. 2911.01 with a firearm specification pursuant to R.C. 2941.145, and one count of having a weapon while under disability in violation of R.C. 2923.13. Appellant entered a not guilty plea to

2

> the charges and proceeded to a jury trial. The trial court dismissed the weapon under disability count before trial.
>
> During the voir dire, the State disclosed for the first time to appellant's counsel the results of ballistics tests conducted by Mark Hardy, the State's ballistics expert. The tests compared markings on the spent casings recovered in the victim's house to markings on a live round the police later found in the vehicle in which appellant was a passenger on the day of Tatum's death. Hardy concluded that at one time the ammunition had been chambered in the same weapon. Appellant's counsel objected to the State's use of these test results, arguing that the State failed to timely produce them. The trial court initially excluded the evidence, concerned that the case had been pending for almost a year and a half and that the trial had already begun. The State asked the trial court to reconsider its decision, advising the trial court that it would dismiss the death penalty specification if the trial court granted a continuance instead of excluding the test results, thereby allowing appellant's counsel additional time to review the test results. Appellant's counsel objected to a continuance and renewed its argument to exclude the test results. The trial court reconsidered and determined that exclusion of the evidence was too severe of a penalty. With that ruling in mind, the parties and the trial court agreed that the State would dismiss the death penalty specification, and that the trial court would continue the case to allow appellant's counsel additional time to assess the test results and to prepare for Hardy's testimony.
>
> Ultimately, the trial resumed and at its conclusion the jury found appellant guilty of aggravated murder and aggravated robbery as well as the attendant firearm specifications.

*State v. Johnson*, 2006 WL 158628 (Ohio App. 10 Dist. January 18, 2006). Petitioner did not file a timely appeal; however, on January 5, 2005, represented by new counsel, he filed a motion for delayed appeal, which motion was granted. *Exhibits 7 and 8 to Return of Writ*. Petitioner asserted the following assignments of error:

3

> [1.] Appellant's conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.
>
> [2.] Appellant's due process rights under the state and federal constitutions were violated when inadmissible ballistics testimony was presented for the state.
>
> [3.] Appellant's due process rights under the state and federal constitutions were violated when a state's witness was permitted to testify about alleged statements of Appellant where the prejudicial impact of the statement outweighed its probative value.

*See id.; Exhibit 9 to Return of Writ.* On January 19, 2006, the appellate court affirmed the trial court's judgment. *Id.; Exhibit 11 to Return of Writ.* Petitioner filed a timely appeal in which he raised the same claims. *Exhibit 12 to Return of Writ.* On May 24, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *Exhibit 14 to Return of Writ.*

On June 28, 2007, through counsel, petitioner filed a delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). *Exhibit 15 to Opposition to Motion to Amend.* Petitioner asserted the ineffective assistance of his appellate counsel due to counsel's failure to raise the following issues on direct appeal:

> 1. The trial court erred when it refused to impanel a new jury after dismissing the death penalty specification, depriving Mr. Johnson of his Sixth Amendment right to a fair and impartial jury.
>
> 2. The trial court erred when it failed to grant a mistrial based on the prosecutor's misconduct depriving Mr. Johnson of his due process rights.
>
> 3. The trial court erred when it refused to exclude late

4

evidence in violation of Crim. R. 16.

*Id.* On August 28, 2007, the appellate court denied petitioner's delayed application for failure to establish good cause for his untimely filing. *Exhibit 16 to Opposition to Motion to Amend.* Petitioner filed a timely appeal to the Ohio Supreme Court. He raised the following propositions of law:

> 1. A defendant is deprived of the right to a fair and impartial jury when a trial court refuses to impanel a new jury after it selected a death penalty qualified jury, and the State dismisses the death penalty specification....
>
> 2. A defendant's due process rights are violated when a trial court fails to grant a mistrial based on the prosecutor's misconduct....
>
> 3. A defendant is deprived of due process and a fair trial when the trial court refuses to exclude evidence which the State attempts to introduce for the first time after the trial begins....
>
> 4. When an appellate attorney fails to raise meritorious issues in a criminal defendant's direct appeal of a conviction, the attorney renders constitutionally ineffective assistance....
>
> 5. A court of appeals denies a criminal defendant due process of law when it denies a delayed application for reopening under App.R. 26(B), when the appellant has demonstrated that good cause for delay exists....

*Exhibit 17 to Opposition to Motion to Amend.* On December 12, 2007, the Ohio Supreme Court dismissed the appeal. *Exhibit 19 to Opposition to Motion to Amend.*

Represented by the Ohio Public Defender, on May 30, 2007, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He initially alleged the following single claim for relief:

5

> 1. Due Process bars the admission of improper ballistics testimony, and its erroneous admission warrants a new trial.

*See Petition.* On April 3, 2008, the Court granted petitioner's request to amend the petition to include the following additional claims:

> 2. A defendant is deprived of due process and a fair trial when the trial court refuses to exclude evidence which the state attempts to introduce for the first time after the trial begins....
>
> 3. When an appellate attorney fails to raise meritorious issues in a criminal defendant's direct appeal of a conviction, the attorney renders constitutionally ineffective assistance....

It is the position of the respondent that petitioner's claims are procedurally defaulted and without merit.

## FAIR PRESENTMENT

In claim one, petitioner asserts that he was denied due process by admission of ballistics evidence against him. Respondent contends that petitioner has waived the right to raise this claim in federal habeas corpus proceedings by failing to present the issue as one of federal constitutional magnitude in the Ohio Tenth District Court of Appeals.

In order to exhaust available state remedies, a petitioner must first fairly present the substance of his federal habeas corpus claims to the state courts *Picard v. Connor,* 404 U.S. 270, 275 (1971); *Anderson v. Harless,* 459 U.S. 4, 6 (1982). "The state courts must be provided with a fair opportunity to apply controlling legal principles to the facts bearing upon petitioner's constitutional claims." *Sampson v. Love,* 782 F.2d 53, 55 (6th Cir.1986). Petitioner does not fairly present his claim simply because the necessary facts supporting a federal

6

constitutional claim are present or because the constitutional claim appears to be self-evident. *Haggins v. Warden,* 715 F.2d 1050, 1054 (6th Cir.1983)(citing *Harless,* 459 U.S. at 6, 103 S.Ct. 276). "A petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions employing Constitutional analysis, or state decisions employing Constitutional analysis in similar fact patterns." *Levine v. Torvik,* 986 F.2d 1506, 1515 (6th Cir.1993)(citing *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir.1987)). Courts normally require more than a single broad generalization that petitioner was denied a "fair trial" or "due process of law." *Franklin,* 811 F.2d at 326; *Petrucelli v. Coombe,* 735 F.2d 684, 688 (2nd Cir.1984). Petitioner, however, need not "cite book and verse on the federal constitution." *Picard,* 404 U.S. at 277 (quoting *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir.1960)). The Sixth Circuit has strictly followed the requirement that a petitioner fairly present his federal constitutional claims to the state courts as a precondition to federal habeas review. *Weaver v. Foltz,* 888 F.2d 1097, 1098 (6th Cir.1989).

Petitioner in this case argued on direct appeal that he been denied due process by admission of ballistics evidence against him in violation of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), which governs admission of scientific evidence in federal proceedings, and under Ohio law. *See Miller v. Bike Athletic Company*, 80 Ohio St. 3d 607, 611-614 (1998)(applying *Daubert* in determining admissibility of scientific evidence under Ohio Evidence Rule 702). Thus, petitioner has preserved this same claim for federal habeas corpus review. Review of the record, however, reflects that this claim lacks merit.

Petitioner contends that admission of testimony by the prosecution's expert witness,

7

Mark Hardy, violated *Daubert v. Merrell Dow Pharmaceuticals, Inc., supra*, and *Miller v. Bike Athletic Company*, *supra,* and thus denied him due process because

> [t]here was no testimony presented that the method of examining live ammunition had ever been tested, subject to peer review or had any data indicating a rate of error.

*Traverse*, at 9.  Additionally, petitioner contends that Hardy's testimony constituted "the only objective evidence linking Mr. Johnson to the crime scene." *Id.*, at 14.  These arguments are not persuasive.

As discussed by the state appellate court, and contrary to petitioner's allegation here, even discounting Hardy's testimony that a "live round" found in the car in which petitioner had been riding, had been chambered in the same weapon as had spent casings found in Tatum's house, *see infra*, there was ample other evidence of petitioner's guilt:

> Damien Sheppard testified that several months before the murder, he was smoking marijuana in a van with a number of people, including appellant. A man in the van stated that he would not be able to rob one "of his dudes." Sheppard testified that appellant responded by saying "I don't give a F. I would rob one of my niggers." The man repeated that he could not do that, and appellant again stated that "I don't care, I got to get mine. I will rob one of my niggers."
>
> \*\*\*
>
> Grimes testified that she left Tatum alone in his house. Appellant then walked into the house. Smith heard gunshots while appellant was in Tatum's house, and Tatum was later found shot to death. The house was in disarray. Tatum's

8

> cousin, Damien Sheppard, testified that Tatum normally wore a chain with a cross on it and a watch that was not on his body or in the house after he was murdered. Sheppard drew a picture of that jewelry for the jury. Smith testified that Tatum had a chain with a cross on it and a watch in his possession after Smith heard gunshots and saw appellant leave Tatum's house. Smith also drew a picture of the jewelry. The drawings and descriptions of those pieces of jewelry were strikingly similar....
>
> \*\*\*
>
> ... Grimes testified that when she left Tatum in the house, he was alone. As she left, she saw appellant walking up to the front door. Appellant was alone. Neither Tanner nor Smith testified that any other person went into the house while appellant was inside. Sheppard testified that the back door of the victim's house was locked and that no one could go in or go out through the back door. Smith testified that he heard four to five gunshots while appellant was in Tatum's house and then saw appellant come out of the house. After appellant got back into the car, Smith testified that appellant told him that he (appellant) had to "whack the dude" because he was running. Smith also saw that appellant had a chain with a cross on it and a watch in his possession which matched a description of the victim's jewelry later given by Sheppard.
>
> \*\*\*
>
> ... Sheppard also testified that the victim's house had been ransacked.

*State v. Johnson, supra*, 2006 WL 158628.

Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke,* 916 F.2d 329, 335 (6th Cir. 1990). Evidentiary questions generally do not rise to a constitutional level unless the error is so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders*, 837 F.2d 284, 286

9

(6th Cir. 1983). When such errors are alleged, the federal court's inquiry in reviewing these claims is directed to whether the evidence was rationally connected to the crime charged. *Carter v. Jago,* 637 F.2d 449, 457 (6th Cir. 1980). For the reasons discussed by the state appellate court, admission of the evidence at issue meets this test here.

> In his second assignment of error, appellant contends the trial court erred by admitting Hardy's expert testimony in violation of *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. We disagree.
>
> Mark Hardy is a criminalist with the Columbus Police Department. A criminalist analyzes and examines physical evidence. Hardy offered expert ballistics testimony during the trial. The admission of expert testimony is within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion. *State v. Williams* (1996), 74 Ohio St.3d 569, 576, 660 N.E.2d 724. An abuse of discretion requires more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Reiner* (2000), 89 Ohio St.3d 342, 356, 731 N.E.2d 662.
>
> Evid.R. 702 governs the admissibility of expert testimony. That rule provides:
>
> A witness may testify as an expert if all of the following apply:
>
> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following

apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

Appellant does not contest Hardy's qualifications as an expert witness. Appellant also concedes that Hardy's testimony relates to matters beyond the knowledge of a lay person. However, appellant contests the reliability of Hardy's expert opinion. To determine the reliability of expert scientific testimony, a court must assess whether the reasoning or methodology underlying the testimony is scientifically valid. *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 611, 687 N.E.2d 735, citing *Daubert, supra*, at 592-593. To make that assessment, several factors are to be considered: (1) whether the theory or technique has been tested; (2) whether it has been subjected to peer review; (3) whether there is a known or potential rate of error; and (4) whether the methodology has gained general acceptance. *Id.; see, also Valentine v. PPG Industries, Inc.*, 158 Ohio App.3d 615, 821 N.E.2d 580, 2004-Ohio-4521, at ¶ 25. None of these factors are determinative. *Coe v. Young* (2001), 145 Ohio App.3d 499, 504, 763 N.E.2d 652. Rather, the inquiry is flexible, focusing on the underlying principles and methodologies and not on the resulting conclusions. *Miller*, at 611, 687 N.E.2d 735.

Hardy conducted tests that compared tool marks on the spent casings found in Tatum's house to tool marks on a live round police discovered in the car in which appellant was a passenger on the day of Tatum's murder. Tool marks are marks left on an item by a tool, in this case a firearm. Hardy explained that he first examined the spent casings to find marks or characteristics that would be unique to the weapon from which they were fired. Such characteristics are marks

> imparted on a round or casing that are unique to one weapon to the exclusion of all other weapons, such as magazine, extractor, and chambering marks. Hardy then examined the live round and found the same unique marks he detected on the spent casings. Therefore, he concluded that the live round and the spent casings were, at one time, chambered in the same weapon.
>
> In defending the reliability of his methodology, Hardy explained that the characteristics a particular gun imparts on a bullet casing, be it a live round or a spent casing, are the same regardless of whether the gun is fired. Comparing tool marks on live rounds to those on spent casings is the same type of testing he normally performs when comparing spent casings. He simply looks for matching tool marks on the different objects. Hardy testified that these tests are scientifically valid and commonly accepted within the scientific community. The trial court allowed this testimony because the tests Hardy performed were essentially the same as those he normally performs in determining if two bullets were fired from the same gun. Given Hardy's explanation of his methodology, the trial court did not abuse its discretion by admitting his testimony, as his opinion was based on reliable, commonly accepted scientific principles. Cf. *State v. Armstrong,* Trumbull App. No.2001-T-0120, 2004-Ohio-5635, at ¶ 66 (affirming admission of expert ballistics testimony). The jury was capable of assessing the weight of this testimony. Therefore, appellant's second assignment of error is overruled.

*State v. Johnson*, 2006 WL 158628 (Ohio App. 10th Dist. Jan. 19, 2006). The record simply fails to reflect that the state trial court's evidentiary ruling permitting admission of Hardy's testimony against petitioner was so improper as to deny petitioner a constitutionally fair trial.

> Where a specific constitutional right-such as the right to confront witnesses or to present a defense-is not implicated, federal habeas relief is available only if the allegedly

>erroneously admitted evidence "is almost totally unreliable and ... the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle,* 463 U.S. 880, 899, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). This general rule regarding the limited cognizability of evidentiary claims on federal habeas review applies equally to claims based on the allegedly improper admission of scientific evidence. *See, e.g., Norris v. Schotten,* 146 F.3d 314, 335 (6th Cir.1998); *Spencer v. Murray,* 18 F.3d 237, 239 (4th Cir.1994); *Arnold v. Wyrick,* 646 F.2d 1225, 1228 (8th Cir.1981); *Albanese v. McGinnis,* 823 F.Supp. 521, 553 (N.D.Ill.1993).

*Coy v. Renico*, 414 F.Supp.2d 744, 756 (E.D. Michigan February 15, 2006).

Claim one is without merit.

## PROCEDURAL DEFAULT

In claim two, petitioner asserts that he was denied a fair trial by admission of ballistics evidence against him in view of the prosecutor's untimely disclosure of such evidence after trial had begun.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims

13

to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir. 1985).

Petitioner's second claim, *i.e.,* the prosecutor's untimely disclosure of ballistics evidence denied petitioner a fair trial, was readily apparent from the face of the record and should have been raised on direct appeal but was not. Petitioner may now no longer

14

present such claim to the state courts under Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given an opportunity to enforce that procedural rule due to the nature of petitioner's procedural default. This Court deems the first and second parts of the *Maupin* test to have been satisfied.

This Court must also decide whether this procedural rule constitutes an adequate and independent basis upon which to foreclose review of petitioner's federal constitutional claims. This task requires the Court to balance the state's interests underlying this procedural rule against the federal interest in reviewing federal claims. *See Maupin v. Smith*, 785 F.2d at 138. Under this analysis, the procedural rule barring petitioner's claim two from federal habeas corpus review constitutes an adequate and independent state grounds for denying relief. The state courts must be given a full and fair opportunity to remedy alleged constitutional defects. The requirement that all available claims be presented at the first opportunity serves the state's interests in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. Further, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine. *See State v. Cole, supra; State v. Ishmail, supra; State v. Perry, supra*.

Petitioner has therefore waived his right to present claim two for federal habeas review.

Petitioner can still secure review of claim two on the merits if he demonstrates cause

for his failure to follow the state procedural rules as well as actual prejudice from the constitutional violation that he alleges.

> "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him [;] ... some objective factor *external* to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003)(emphasis in original). As cause for his procedural default, and as claim three of this habeas corpus petition, petitioner asserts the ineffective assistance of appellate counsel.

The ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). In his untimely Rule 26(B) application, petitioner asserted the denial of effective assistance of appellate counsel based, *inter alia*, upon his appellate attorney's failure to raise on direct appeal a claim that ballistics evidence was inadmissible under Ohio Criminal Rule 16 in view of the prosecutor's untimely disclosure of such evidence. Petitioner did not, however, frame the issue as one of federal magnitude. *See Exhibit 15 to Return of Writ.* Further, the state appellate court refused to address the merits of petitioner's ineffective assistance of appellate counsel claim due to petitioner's failure to establish good cause for his untimely filing. *See Exhibit 16 to Return of Writ.*

Under these circumstances, petitioner's claim of ineffective appellate counsel, as

16

presented in claim three, was not preserved for federal habeas corpus review and cannot serve to excuse the procedural default of petitioner's claim two.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


July 29, 2008                                                          s/Norah McCann King
                                                                                     Norah McCann King
                                                                                    United States Magistrate Judge